Inman & Company *v.* Swift, Wilcox & Braswell.

1. The charge complained of in the 4th ground of the motion for a new trial, whether amenable to some other criticism or not, is not error for the reason alleged, viz., that it leaves the construction of the contract to the jury; it does not, either expressly or by implication, instruct the jury to construe the contract.

2. The charge complained of in the 5th ground of the motion does not, as alleged, " impose the condition of immediate purchase and delivery as requisite to the validity of the contract sued on"; upon the contrary, the charge declares that " if the cotton was to be bought immediately and delivered when bought, or defendants' skill and labor entered into the contract, or that it was at once to

be carried out, or that both parties were not aware that defendant expected to purchase to fill said contract, or there was expense entering into the consideration, then the contract would be valid and binding."

3. The case having been defended on several independent grounds, and there being evidence sufficient to sustain one or more of them, the verdict was warranted, and the court did not err in refusing to grant a new trial. *Judgment affirmed.*

May 30, 1892.

Contract. Charge of court. Verdict. Before Judge McWHORTER. Elbert superior court. September term, 1891.

Inman & Company sued the defendants for damages from a breach of two contracts dated May 2, 1889, by one of which the defendants agreed to sell to Inman & Company five hundred bales of cotton weighing 250,000 pounds, deliverable in November, 1889, and by the other to sell them the same amount, deliverable in December, 1889. Each contract provided that the delivery should be made at such time, at seller's option, in lots of not less than one hundred bales; the cotton to be of any grade between strict ordinary and fair, inclusive, at the price of nine and three eighths cents per pound for middling, Atlanta classification, with deductions and additions for other grades according to the rates of the Atlanta cotton market on the day of delivery; "the cotton sold above is cotton to be received in payment of fertilizers and supplies, and is not to be settled by price of contract." The plaintiffs alleged that these contracts were made in good faith and for the sale and delivery of actual cotton, and not tainted with "contract cotton or futures"; that in pursuance of the contract the defendants, in November, 1889, delivered to plaintiffs two hundred and eighty-five bales, leaving due on the November contract two hundred and fifteen bales; that after said contract was due and when demand was made on defendants for delivery of the remaining two hundred

and fifteen bales, they requested time to buy up the cotton and make delivery, to which plaintiffs agreed, and extended the time; that when the December contract became due, performance of it was demanded and the defendants again requested the plaintiffs to extend the time on both of the contracts, which the plaintiffs agreed to do and did do from time to time until the 29th of January, 1890, when the defendants refused to perform either or both of the contracts, which refusal left the plaintiffs due from defendants seven hundred and fifteen bales or 357,488 pounds of cotton; that cotton had then advanced above the price agreed on one cent per pound, and by the defendants' failure and refusal to perform their part of the contracts the plaintiffs were damaged in the price on said cotton $3,574.88; that had the defendants delivered the seven hundred and fifteen bales, the plaintiffs could have made one dollar per bale as commission or profit, which is a legal, just and honest commission or profit and the direct and consequential profits of such contracts on the part of plaintiffs, and they were further damaged in that sum by the defendants' failure in performance; and that the cotton contracted for with the defendants had been by the plaintiffs sold on a similar contract to manufacturers, and had the defendants delivered the same as they had contracted to do, the plaintiffs would have been enabled to fill the contract of sale of the same cotton, and on said sale made a commission or profit of one dollar a bale, as before alleged. The defendants pleaded (1) the general issue; (2) that the contract sued on is illegal, because it shows on its face that it is a contract for the delivery of cotton not then in existence, but for cotton to be received in payment of fertilizers and supplies; (3) that the plaintiffs refused to comply with their part of the contract by refusing to accept cotton tendered them at Atlanta classification, by which refusal the defendants

were released; and (4) that by the plaintiffs' refusal to comply with their obligation the contracts were rescinded. The jury found for the defendants. A new trial was denied, and the plaintiffs excepted. Besides the grounds that the verdict is contrary to law and evidence, the plaintiffs assign error upon the following instructions in the charge of the court:

"This contract is clear and unambiguous; and if you believe from the evidence that this contract is legal under the principles of law which may be given you in charge, and that the defendants failed to comply therewith, and that the plaintiffs performed the obligation imposed upon them by its terms, and the plaintiffs suffered damage or loss on account of defendants' failure to perform the same, if there was such a failure, you would be authorized to find for the plaintiffs the amount of the damage sustained by such failure. A bare contingency or possibility cannot be the subject of sale, unless there exists a present right in the person selling, to a future benefit. So a contract for the sale of goods to be delivered at a future day, where both the parties are aware that the seller expects to purchase himself to fulfill his contract, and no skill and labor or expense enters into the consideration, but the same is a pure speculation upon chances, is contrary to the policy of the law, and can be enforced by neither party." The error being that the construction of the contract is left to the jury.

"On the other hand, if the cotton was to be bought immediately and delivered when bought, or defendants' skill and labor entered into the contract and it was at once to be carried out, or both parties were not aware that defendants expected to purchase to fill said contract, or there was expense entering into the consideration, then the contract would be valid and binding and a recovery could be predicated on a breach thereof." Said charge

being illegal in that it imposes the condition of immediate purchase and delivery as requisite to the validity of the contract sued on.

It appears from the evidence that on May 2, 1889, the parties made, besides the contracts sued on, a similar contract for the delivery of 500 bales of cotton during October. On November 6th the October contract was performed, and part of the November contract was performed by the delivery to Schaefer, the plaintiff's agent, of 786 bales according to Schaefer's testimony, or 806 bales according to the testimony of Thos. Swift, one of the defendants. The testimony for the plaintiffs further showed the following: Schaefer had been in the cotton business about twenty-three years, and had been connected with the plaintiffs nearly all that time. There was but one delivery, and at Swift's warehouse in Elberton; it was made on Schaefer's classification and grading, which was in accordance with Atlanta classification. He looked at samples only, the cotton being in Swift's warehouse; he classified 869 bales, and asked Swift to look at the grades and classification, and to take out what was not satisfactory. Swift complained that 83 bales were graded "too full," and took them out by taking out the samples of them. It was optional with him as to how much, if any, Schaefer was to take on the grade made. He offered only this 83 bales more than Schaefer received. Schaefer does not know that Swift took out this 83 bales because he objected to the grade—he might have been able to have placed them better; does not think he claimed Schaefer had graded the cotton too low or two high; he looked over the grades and remarked that the 83 bales he took out were a little full; Schaefer replied, "No, but if you think it is full, you have a right to reject it." This is all that passed. Part of the 786 bales delivered were classified by Schaefer at Elberton, and part by Cowles, another

agent of the plaintiffs, at Toccoa. The cotton was sampled at Elberton, and samples were sent to Toccoa. Plaintiffs never lowered their grades or changed them in any way, nor did Schaefer make any change in them at this time. The defendants never afterwards tendered any more cotton on the contracts, nor did Schaefer ever make any more grades or classifications for them. Swift never complained of grades save as to the 83 bales he took out; he and Schaefer settled the grades that day, and nothing more was said; the delivery was made on the same day, but after the complaint at the grades. After this delivery Schaefer asked Swift time and again for delivery of the balance due on the November and December contracts, and he continuously put Schaefer off (January, 1890), saying once that his book-keeper was not there, and again that he would go to Atlanta and make delivery to the house. Schaefer then told him, all right, to do so. Once he said he would rather make settlement at the difference, and asked Schaefer to make out his bill and let him pay the difference in money; to which Schaefer replied that he was authorized to take only cotton, not money, on contracts. Swift never gave as a reason for not delivering on the contract, that Schaefer did not grade according to contract. He has never delivered the balance in Atlanta or elsewhere; and on January 29, 1890, the defendants refused to deliver any more on either the November or December contract. Cotton was then worth in Atlanta one cent per pound higher than the contract price, and not more than one sixteenth lower in Elberton than in Atlanta. They were then due the plaintiffs 357,488 pounds, having delivered 392,512 pounds. About the time delivery was to be made on the November and December contracts, it would require about six weeks to buy from wagons and deliver 1,000 bales. In the latter part of December, 1889, or first of January, 1890,

Cowles went to see Swift to get him to deliver the balance on the November and December contracts, and asked him what he proposed to do about it. He said he hardly knew, that if the plaintiffs would wait on him for a while, he could deliver the cotton; and asked if it would suit to buy and deliver in Atlanta. Cowles replied that it would, and Swift then promised to go down the next week and buy from Maddox & Rucker and deliver to plaintiffs in Atlanta. Afterwards he asked Cowles to let him pay the difference in money, which was refused. The plaintiffs had bought the cotton to be delivered to the mills. It requires skill to buy cotton; it requires a man of good judgment, good eyes, good judgment of lights and shadows, good judgment of the staple and as to shades and colors of cotton. Swift complained at Schaefer's grades, and said he had some types sent him from Atlanta that were not like plaintiffs' cotton. Cowles does not know that he said he could not submit to Schaefer's grades and would therefore go to Atlanta and deliver; he claimed plaintiffs required a better class of cotton than the types sent him from Atlanta. When the contracts were made Swift wanted to know what plaintiffs called middling cotton, and was shown samples classed as middling. The sale was based on Atlanta classification, and was expected to be classed by plaintiff's representatives. Swift remarked, when shown the samples, that the grade middling shown him was a full class, to which Dickson, who made the contract for the plaintiffs, replied that the price was relatively full. The defendants would have to deliver under these contracts the actual cotton. The time of delivery on them was extended to the 29th of January, 1890. Atlanta grades much higher than New York; middling cotton in Atlanta will class good middling in New York.

Testimony for the defendants: When the contracts

were made by Thos. Swift for defendants, he objected to the statement about fertilizers and provisions, and told Sanders, one of the plaintiffs, that he did not sell any supplies to be paid for in cotton, but sold to be paid for in money; he did sell some fertilizers to be paid in cotton. Sanders said it did not matter, as it was a matter of form they had, and Swift signed on that account. He told Sanders he expected to buy the cotton. On the 6th of November, he had the cotton in the warehouse to deliver all that was then due, and did not deliver the balance on account of the objections he made to Schaefer's grades. Schaefer had sampled up 893 bales, and Swift took out 83 bales, delivering the other 806 bales because he had received $25,000 from the plaintiffs. He had types of Atlanta classification furnished by plaintiffs, Maddox, Rucker & Co., Treadwell, Abbott & Co., of Atlanta, and was shown the Atlanta types when he signed the contracts; has been buying cotton eighteen years, and knows what Atlanta middlings are. Schaefer graded the 83 bales taken out as strict good ordinary, the grade below low middling. Swift showed him the types he had, and told him he had graded it too high; properly graded, these 83 bales would have been strict low middling. Swift sold these 83 bales to an agent of a Philadelphia house for seven eighths of a cent per pound more than Schaefer's classification was worth; this purchase was made by New York classification. In the first week in December Schaefer asked if Swift was ready to deliver the December contract; Swift replied that there was a wide difference between them and he would not deliver him any more cotton, but that if there was any money difference he would pay him the money, but would not submit to his grades any further. This was the only demand made on Swift by Schaefer. During the same month Cowles told Swift that if he had been there when Schaefer graded the cotton, he thought

there would have been no trouble about it, and that they could have agreed. Swift did not then ask Cowles to go and sample up the 1,000 bales in the warehouse at that time, nor did Cowles offer to sample it. Swift sold this 1,000 bales on January 9, 1890, to his brother, Ike Swift, for the plaintiffs, for the same price at which he had sold the 83 bales to the Philadelphia house, but sold in bulk and not on grades or classification. Swift never asked for extension of time to deliver the cotton; he had it on hand, and if they had agreed to take it at Atlanta classification they could have got it at any time during those three months. · The defendants got most of this cotton by paying the money for it; 400 bales would cover all bought for supplies and fertilizers during the year. They would buy a farmer's cotton, pay off the farmer's account with them, and pay the balance to him in money. When Sanders showed Swift the grades, he said he would expect the cotton to come up to that grade, and if the grade was lower the price would be lower in proportion. Swift does not remember that Dickson was present, or that Swift said the grades were full, or that Dickson replied the price was also full. In the settlement with the plaintiffs-the basis was Atlanta grades and not New York grades; Swift bought and sold on New York classification. When Schaefer was grading the cotton on the 6th of November, Swift held a type in his hand that he claimed was the grade he sold in this contract. Schaefer asked where he got it; Swift said, in Atlanta. Schaefer said, from whom; Swift said it made no difference, it was Atlanta classification. He further said he would deliver the balance of the cotton on the Atlanta classification, but not the way Schaefer graded it.

Ike Swift was buying cotton at the time and knew Atlanta classification, but did not consider himself an expert; he classed for the plaintiffs, but they never

bought by his classification ; sometimes there was a great deal of difference between his and their grades ; sometimes he was above and sometimes below ; he thought the grade Schaefer made of some of defendants' cotton was a little high, and so told him, but there was a very slight difference ; he also told Schaefer that the grades were about what he was buying for the plaintiffs ; the grading done by Schaefer corresponded practically with the grading Ike Swift had been doing in buying for the plaintiffs, except that there was a slight difference, about as if he had bought it from some other warehouse. The merchants in Elberton buy on New York grades. Ike Swift examined the 83 bales above referred to, and would call them low middling and above Schaefer's grading by three sixteenths to one fourth of a cent per pound.

J. N. WORLEY and W. M. HOWARD, for plaintiffs.
JOHN P. SHANNON, for defendants.